We'll hear argument first this morning in Case 13-1174, Gelboim v. Bank of America. Mr. Goldstein. Mr. Chief Justice, may it please the Court. My clients filed this lawsuit against Mr. Waxman's clients. The district court dismissed that lawsuit and said that it was terminated. Now, from the earliest days of this Court's—excuse me, this Nation's jurisdictional statutes, that would be an appealable order under the aptly named Final Judgment Rule. And that must be so unless something changed with Congress's enactment of Section 1407a, the Multidistrict Litigation Statute. And we ask you to hold that nothing changed and it was appealable for three reasons. The first is the judgment was entered in disaction. It was dismissed. We had our own complaint, our own docket, our own lawyers, our own plaintiffs, and our own defendants. The second is that there is no judgment in the MDL itself. So there is nothing from which we could appeal at the end of the MDL litigation. So it must be that we appeal from this. And the third is that Rule 54b of the Rules of Civil Procedure does not apply, because that applies to the dismissal of part of an action, some of the claims or some of the parties, not the whole action. And here the whole action was dismissed. Sotomayor, could you tell me first what difference there is, if any, pursuant to your reasons, that would not apply to a consolidated case for all purposes, number one? And number two, isn't a case consolidated with others for purposes of pretrial proceedings a pending action that involves multiple parties? As to the first, there are different forms of consolidation. Both sides agree with that. They make this point. The Respondents do on page 33 of their brief. There are forms of consolidation that produce a single action. That can happen under Rule 20 with Joinder. It can happen under Rule 42a1 if the parties consent with consolidation. The cases can become so intertwined that there is effectively one case, one complaint, and one action. Sotomayor, that's frankly not the majority of the cases. That does not happen most of the time. Sotomayor, that's what I'm saying. Sotomayor, in most of the MDLs, most of the cases retain their individual character, even though they are consolidated for all purposes. There may be a case that's taken as a test case among the many, et cetera. Your rule basically is saying consolidation now will permit piecemeal appeals in almost every circumstance, except for a very limited number. One preliminary point, and then the question about what our rule produces. In MDL litigation, as this district court recognized, you actually don't have consolidation for all purposes. Section 1407a specifies that there can be consolidation for pretrial purposes only. The pretrial purposes in this case are over. The complaint was dismissed. Now, as to the policy arguments of the Respondents, that there is a grave concern that our rule would produce interlocutory appeals that go up to the court of appeals lots of different times. There is a straightforward answer to that point, and that is that district courts, just as they have the discretion to enter a partial final judgment under Rule 54b, have the same discretion to avoid entering a final judgment in individual actions under Rule 58b. And this is very common in MDL litigation, just as you indicate, Justice Sotomayor. Very frequently, district courts will enter consolidated complaints and will not enter orders in the individual actions that would be appealable. The distinct feature of this case, the critical distinct feature here, is that this district court decided to dismiss in its entirety our individual actions. She didn't have to do that, but she did it consciously. Roberts. Does the 150-day provision kick in? I mean, you say don't worry about this. District courts can just put it on the back burner for 3 years, however long. Doesn't the 150-day provision kick in if, in fact, the district court has dismissed all of the claims? Two things, Mr. Chief Justice. First, we think it does not. So here we're talking about Rule 58b and Rule 58c. And I apologize. Doesn't Rule 58 say, unless otherwise provided? Yes. So the automatic entry of judgment doesn't happen if the district judge specifically otherwise provides. That is correct. But the Chief Justice is pointing out that it's not entirely clear what 58c means and how long the district court's discretion lasts under Rule 58b. I will give you an example. And if the Court wanted the library of the clerks to look up the 1935 MDL in the middle of the district court. But we could do it ourselves. The MDL litigation, as you well could, the MDL litigation in the chocolate litigation, there the district court used the tool that we're discussing right now. It said, I'm going to resolve some of the claims, but I'm not going to enter an appealable judgment. We do think that's the better reading. Breyer, how do you do that? Because not all of us can look it up themselves. The rule does say that the clerk, once the judge denies all relief, he says to you or somebody, I deny all relief in your case. Then the clerk is supposed to just enter the judgment. How is the judge supposed to not do that? Just noting that I do want to return to the other tools the district court has, and I apologize, the parties have not reproduced the rule, so I'm going to describe it for you. And that is the district court. Why don't I just answer what I just asked you? Okay. That is that Rule 58b-1 provides that the district court, and this is the provision Justice Ginsburg is talking about, the district court may direct the clerk not to enter a judgment. Breyer, I see. So he says don't do it. But we have seven – I mean, I am moved by this. We have a group of Federal district judges who actually don't have to look these up because every day they work with them. Well, they are actually not. They are not. Your rule, if we agree with you, we are going to produce a mess. And then they have about seven different ways in which it will produce a mess in various cases. And so obviously, I do pay attention when the district judges do say that. And so I'm not a district judge, but I don't want to produce a mess for them. The MDL is trying to do the opposite. So what's the answer to what they say? Okay. What they say, Mr. Justice Breyer, is actually not that our result will produce a mess. It is they quite clearly say we are not asking you to – we are not saying with the correct interpretation that the statute of rules are. They have a grave concern that you identify, which is we don't want automatic interlocutory appeals from MDLs. Our answer is that our rule does not produce automatic interlocutory appeals because district judges are perfectly free through a number of tools, only one of which we have been discussing, not to enter into a mess. Breyer, your rule is the district judge, despite Rule 58b, et cetera, says I deny all relief in your case, Mr. Smith. Everyone out, good-bye. Then you say to the clerk, clerk, don't enter the piece of paper called a judgment because I don't want them to take an appeal. And then they ask for mandamus on the ground that must be an abuse of discretion. What happens? Has it happened a lot? There is an MDL in which this happened. It is the chocolate MDL. The reason it doesn't happen very often, Justice Breyer, is this problem doesn't happen very often. So preliminarily, the only time – So I say your rule will, in fact, win your case for your client. No. And then in the future, no one else is going to win. Justice Breyer, that is not correct. Frequently, district judges will want these questions to go up on appeal because they will get guidance. Now, they can do it under 54 or they can enter a final judgment in the case. So there is the 1935 MDL using Rule 58b. But there are many other tools that district judges have. Justice Goldstein, as your view of the case is 54b would not be appropriate. Yes. When the judge says I dismiss this claim entirely, this complaint is out, it's a final judgment. It's not appropriate for Rule 54 because Rule 54b is when one claim is done but other claims are still pending. That's correct. Justice Breyer's suggestion of Rule 54b would not work if the district judge has dismissed the entire action. It does say by its terms that it applies only to the dismissal of some of the parties or some of the claims in the action. The action throughout the rules of civil procedure refers only to one thing, that is the individual piece of litigation. We have our own complaint, our own docket, our own plaintiff's defense employer. But your answer is that, oh, well, the district judge can find plenty of ways, disingenuously perhaps, to say this isn't going to be entered yet, we're just going to wait. And so Chief Justice says you have the 150-day problem. It seems to me that if you're asking for these sort of furtive measures, we might as well face up to the problem right away and just adopt Mr. Waxman's position. Well, Justice Kennedy, we don't think it's — It seems to me you're asking the judge to be almost disingenuous. We disagree for the following reason, and that is, if the point of Mr. Waxman's side is that district judges need discretion to decide when to enter judgments, whether they're 54B partial final judgments or final judgments under Rule 58, the discretion should be the same. And the tools that I'm talking about are not used disingenuously by your district judges. They are used consistently, and that is important. But are you then saying that there's no practical difference between your position and Mr. Waxman's position? In other words, you're saying Rule 54 is not the right vehicle, and that's an important point. It's important to get the rules right, whether it's Rule 54 or something else. But are you saying that there's no practical difference between the two? I'm saying there's little practical difference. There is some, and that is that their side requires the district court and the court of appeals to have litigation on whether Rule 54B certification is appropriate and whether the district court abused its discretion in entering a Rule 54B judgment. But there isn't much beyond that. There's one huge difference. The district judge can say no to 54B if it's a final judgment. In this very case, that's exactly what the judge said. In the first round, she said, you have an appeal of right, and she said to the plaintiff who was dismissed. And then, when the Second Circuit said no, she refused to give a 54B. The reason it's not a huge difference, Justice Ginsburg, is that the district court doesn't have to enter a final judgment. I'll give you a very specific example. The district court in this case entered a ruling in three different cases, the OTC plaintiff's case, the exchange plaintiff's case, and the Our Clients, the bondholder case. And if the district court had instead entered her opinion in the OTC or exchange complaints, in a complaint that had just an antitrust claim, for example, that did not have just an antitrust claim, then there would not be an appealable final judgment. The district court quite consciously resolved all the antitrust issues, knowing that they would go up on appeal. She had just changed her mind only after the Second Circuit, in a rule that the Respondents do not defend, decided that it did not want to hear the appeal as a matter of its discretion. It is quite important, I think. Ginsburg. I don't think the court of appeals said as a matter of its discretion, and that was one thing that puzzled me about your presentation. The court of appeals said we have no jurisdiction. That's quite different from saying we have discretion. Ah, but, Justice Ginsburg, their rule is a case-by-case determination if they do have jurisdiction. And they said in our – they did it to esponte. The defendants did not move, actually, to dismiss our appeal. The court of appeals, applying this case-by-case rule that's very hard to predict, which is why the Respondents don't defend it, said we think – they didn't explain much about what they – the reason that they dismissed it. They said we had no jurisdiction. Right. They did, but their rule is that sometimes you can have an appeal like this and they will deem it to be an appealable kind of judgment. There was a – there's a phrase that the Second Circuit uses, and it – something to the effect of an extraordinary case, an exceptional case. Yeah, that's right. But the main rule is there's no jurisdiction. And the great majority of circuits apply the opposite rule. They recognize that there's no reason to depart from the ordinary, long-settled understanding of what a final judgment is. It is called the final judgment rule. We have to – Sotomayor's question about the disingenuous nature of this. So we write an opinion and say, no, it's a final judgment, it can be appealed. Yes. But district courts, you have other tools not to enter the judgment? Yes. You can delay it? It should be – That does sound like all we're saying, that this is a very formalistic ruling. But haven't we said, quoting myself, in Mohawk, that the inquiry should always be a practical one, and that efficiency is part of the calculus? The Court has said that there is a practical inquiry in one important respect, and that is the Court has broadened the notion of what could be an appealable final judgment. But it has never denied the fact that when you decide the case, you resolve it, you terminate it, as the district court does here. That is a final judgment for the purposes of the final judgment. That is if you look at it as narrowly as you do. Your Honor, let me just – in the MDL, these cases were brought together because there is a common factual allegation, and that is that Mr. Waxman's clients manipulated LIBOR. But we have a different complaint in a different docket with different plaintiffs and defendants, and the district court decided to dismiss our case. I admit, and I embrace it. You asked to be part of the MDL case, didn't you? Yes, that's correct. Well, we filed in the Southern District of New York. We asked to be part of the MDL litigation. The district court initially said that we would be consolidated for all purposes and then recognized she could not do that, that we would be consolidated only for pretrial purposes. The pretrial purposes are now over. We were dismissed. And therefore we are dismissed. Mr. Goldstein, following up the, what has been called disingenuous, if no judgment is made, if there is no final judgment, the judge says this is how I'm going to rule, but I'm going to defer making the ruling, that party still is in the case and can participate in discovery. Your strong point, I thought, was here they said I'm out of the case, can't participate anymore because I have no standing, according to the district judge, and yet I have to wait 6 years or however, however long the MDL proceedings go on. So it says you're out, but you can't appeal. Yes. Now, what district judges do in this circumstance, Your Honor, is that they stay the case that they believe will not go forward. This is something that Judge Rakoff does with some regularity in complex litigation. What he will say is my inclination is I'm going to ultimately say that the antitrust claims cannot go forward, and what I'm going to do, therefore, is stay the antitrust claims and, therefore, you do not participate in discovery, for example. But we do think it is important to recognize that there is a real reason for the appeals to go forward, and that is that it avoids duplicative discovery when we have to come back after appeal, and there is the very real prospect of multiple appeals in multiple different courts. Sotomayor, I don't understand that. That's arguing that they shouldn't exercise their 58C. That's what Judge Rakoff is essentially doing. He's saying, and you're saying, we shouldn't let him. I'm sorry, Your Honor, no. If he can say it for as long as he thinks is appropriate, what's the difference? What's the practical difference between the parties? In terms of the effect on you, you're not going to participate in discovery under his system. That's – that is correct. And so my point to the Court is the following, and that is to the extent members of the Court are concerned that the district courts are concerned, the district judges that you cite, Justice Breyer, that we shouldn't have these interlocutory appeals, then the district courts have the tools to deal with that. Breyer, what they tell us, these judges, who are experienced, I stress, on pages 12 and 13, district courts have evaluated the Third Circuit factors, that is 54B factors, in deciding whether to certify one among several consolidated cases for appeal, 54B, footnote, and then in the footnote they have several cases, which I take it since they tell us that, are cases where there were consolidated cases, they used 54B to say that one of the cases could go ahead on appeal. Now, I took that as saying that judges are using 54B to accomplish the end that we seem, apparently, everyone wants, giving them the flexibility, and not the system that you propose. That is not correct, Justice Breyer. So are they wrong or I'm not reading it right? Probably the latter. There is a piece of the puzzle that's missing, and that is that ours is the rule that for decades has been applied in the great majority of the country. In 54, in the majority of the country, judges have said, when we have four cases in front of us we have consolidated, and we wish to dismiss one but keep the others going, they have said we cannot use 54B. They have to have an appeal. No, Justice Breyer, here's the situation. In MDL litigation, which is consolidated cases. I'm not talking about MDL. I'm just talking about consolidated cases. Well, if it's consolidated for all purposes, that's quite different. You get a single action. Okay. Then talk about MDL. Okay. MDL litigation, the rule is as described in the cert papers, overwhelmingly in our favor, and that is the district courts enter judgments when they are required to be prepared for the issue to go up on appeal. The rule is, in the great majority of circuits, that if you do enter a judgment in an individual action in MDL litigation, you appeal. And so district courts are perfectly aware of it. We call it formal, as if it were a bad thing that we have a final judgment rule. But it is not a bad thing. It is really important to have clarity. Kagan. Kagan. But if I could understand, Mr. Goldstein, what you're saying, do you think that a judge that properly considers the exact same factors, whether it's done, as the Respondents would like, under Rule 54, or instead whether it's done your way by staying the action or by holding off on a final order? The answer to that question is I am agnostic on it. My point is that to the extent that you all – that the Court agrees with Mr. Waxman's point that district courts need that discretion, then our solution is simply to give them that discretion with respect to the entry of the final judgment. It is not an argument against our position. The argument for our position that I have not gotten to, and I do want to make sure we don't miss it, is that I am required under Rule 4 of the Federal Rules of Appellate Procedure and Section 2107 of the statutes to appeal within 30 days of the order or judgment that is affecting me. At the end of the MDL, there is no such order or judgment. The only thing that I can appeal from is the dismissal of my action. I do not know at the end of the MDL what it is that I'm actually appealing from. They have – the other problem that they have is that Rule 54b doesn't apply here because the entire – you are going to have to change the meaning of what an action is throughout all of the rules of civil procedure, which is uniformly the single piece of litigation, the single complaint. And there is no reason to create confusion. Imagine after the ruling that Mr. Waxman wants. There are four cases in a district court, and they all relate to the same sort of facts. And the district court dismisses one. If you introduce this ambiguity about what an action is, then people are going to be unclear about when it is that they should be appealing, because our lawsuit is a separate one. It is in a separate docket. We have a separate complaint. Sotomayor. Doesn't it become clear once we announce it? It's not like anybody involved in an MDL doesn't carefully know what's going on. That's the advantage of those cases. It does not. And there is an order. There is an order terminating the MDL and sending the cases that are going to be sent back, back, and the ones who are finalized, those are finalized. Here's what happens. And I suggest that the Court look at the docket, for example, in the Fontainebleau MDL, which is, I think, number 2106. So what happens here is that at the end of the proceedings, imagine the district court dismisses Complaint A. That will be my complaint. And then later on, Complaints B and C settle. So they are done. They are voluntarily dismissed. So there is no final judgment there. It could be years later. What the district court will do is it will send a recommendation to the JPML saying I think that this case is over. The JPML, which is not even in that circuit, will enter an order saying we agree. It is possible that the district court will just enter a notation in the main MDL docket saying the MDL is closed. But that is not an order or judgment from which we are appealing. It is not an order or judgment that affects us. It's not a judgment at all. It's just an administrative notation. This is a place where turning square corners matters, where you should apply the actual statutes and rules. We don't need a new regime about what an action is, what a judgment is, what a final judgment is, in order to accommodate the important policy concerns that Mr. Waxman may be raising. We don't have to change the meaning of Rule 54b. I have a lawsuit. It has a judgment. The district court judge decided to dismiss it. I'm supposed to appeal. Kennedy, if there's an MDL for pretrial purposes and the district court thinks that some cases like yours just should not proceed, does the district judge have authority on its own to dismiss those few cases from the MDL? Does he have that authority, or does he have to go back to the MDL panel to do that? The district judge cannot — the district judge can dismiss cases in the MDL and frequently does. Now, administratively, if the district judge thinks that they just don't belong in the MDL, they will send a recommendation to the JPML. Now, this is, I think, an important point. And if I could just take you to Section 1407. Again, this is a case about a statute. And this is going to be in the blue brief at page 2. The block quote is the MDL statute. And the MDL statute makes quite clear that the actions inside the MDL are separate actions during the MDL. And so what I recommend to you is the — if we go about halfway down, there's a sentence after the word actions that begins each action. It's the line that begins actions. Each action so transferred shall be remanded by the panel. So it's a separate action. At or before the conclusion. So at or before the conclusion of such pretrial proceedings to the district from which it was transferred, so that's when it begins or after it's done, unless it shall have been previously terminated. Provided, however, and this is the sentence that deals with during the MDL, that the panel may separate any claim, cross-claim, counterclaim, or third-party claim, and remand any of such claims before the remainder of the action is remanded. The MDL statute provides for consolidated proceedings. That is, the district judge is going to bring the cases together, administer discovery together, enter orders. Sometimes they'll apply to individual actions. Sometimes it'll apply to all of the actions. But the relevant point is that they are separate actions. They are actions that get initiated, and at the end they get dismissed, and it's called the final judgment rule because it's a rule. It's not called the semifinal constituent matter principle. When our case gets dismissed, it's over and we are supposed to appeal. If there are no further questions, I'll reserve the remainder of my time. Roberts. Thank you, counsel. Mr. Waxman. Mr. Chief Justice, and may it please the Court. Let me start with what's now been the accepted terminology of the disingenuous approach to achieving the flexibility that the district courts need and to avoid the obligation that the courts of appeals must, because his rule requires immediate seriatim piecemeal appeals, hear those. I had been calling it the – a form of guerrilla judging, but the point is that the flexibility that both sides agree, and the retired district judges certainly underscore that district courts need, and the relief that the courts of appeals need from the obligation to hear seriatim piecemeal appeals, is achieved by application of the rule that was specifically designed for this, which is Rule 54B. Now, he says 54B doesn't apply. What that means is – let me just first start by saying, in this entire litigation, one and only one authority has been cited for that proposition. And that is Petitioner's brief. The text of 54B refers to a separate appeal for a claim, counterclaim, cross-claim, or third-party claim. So your 54B argument, I think, is dependent on the proposition that Mr. Goldstein's complaint became part of a single action. Otherwise, it was consolidated, it became part of a single action, and therefore, it was tantamount to a claim. Yes. On that theory, it could fit within 54B. That takes a little bit of – more than perhaps a little bit of pounding to fit that in there, don't you think? No, I don't. And neither does every single court that has construed the application of 54B to consolidated litigation. Well, how did – where do we look to find that his complaint became part of a single action? Well, the MDL statute doesn't make any reference to that, quite to the contrary. Yes, the MDL statute doesn't consolidate cases. It transfers cases to a transferee MDL court. Well, they remain separate actions, and Rule 54B was designed for a single action with multiple claims. And I don't see a single reference in the rule, nothing by the advisory committee, that so much as suggests that a consolidation for pretrial purposes only makes it one action for purposes of 54B. Let me – before I get to the terminology, let me just underscore. I realize this may be waving a red flag in front of this body, but there – not a single court or commentator anywhere has suggested that in consolidated cases, whether they are – that are all consolidated under Rule 42, whether they come in by an MDL or not, that action refers to the consolidated proceedings for such a length as they are consolidated. And, you know, Judge Ginsburg's, the other Ginsburg on the D.C. Circuit's opinion in, I think it's Hill v. Henderson, explains that it is a commonplace in consolidated actions for courts that want a piecemeal appeal to employ Rule 54B. Now, it's possible that everyone is wrong. Kagan. Maybe they are wrong, Mr. Waxman, because, I mean, they're obviously looking for a certain kind of flexibility, which is important, and which I take it both sides have agreed is important. But the question is whether they found it in the right section. And I think what you're being asked is, if you just look at this section, this section is about multi-party, multi-claim, single actions. That's what this section is all about, and it's being used for a purpose for which it was never designed. I think that is quite incorrect as an historical matter. Rule 54B was the product of the Court's experience arising out of these multiple mass actions, particularly exemplified in the electric equipment antitrust litigation, and that's all over the legislative history of Rule 54B, where 54B and 1407 don't — didn't exist at the time and were enacted in the wake of that. And the — what the legislative history shows is that these four — 54 — I guess 54B was in existence, but not 1407. 54B was the mechanism in those consolidated actions by which particular issues of law were reviewed by the courts of appeal that others were not. Kennedy, in this case, at the end of the day, the actions are in effect unconsolidated. When the pretrial MDL is completed here, the separate judgments are not consolidated. The separate judgments will be remanded to the separate courts. So you're — what you're saying is that, well, it's one action for a while, but then it's many actions again. It begins as many, then it's one for a while, then it's going to be many again. Isn't that — isn't that the dynamic that you're after? That is exactly the dynamic for whatever length of time the consolidation occurs. That is the last point. Breyer, in this, in my mind, is that if we take your — one problem with his root — one problem with your root is you have to muck around with the word action. Well, you do. I mean, there's no doubt you do. You have to consider it a single action while it's consolidated. One problem with his root is that, A, nobody's ever done it. They've all thought you're right, and nobody's said much about it. And one problem with his root is you treat consolidations where the multidistrict panel is involved and you consolidate it for discovery differently than you treat consolidations in an ordinary district court, has four cases and consolidates them. That's a problem with his root. So it seems to me a sort of balance there. But one thing he said that I don't — that did register is he said, if we take your district is over, see, 8 months ago his case was dismissed, and a judgment was entered in his case, which is now only part of a case, on your theory. When is he supposed — what is he appealing from? When did the 30-day clock begin to run? And suppose, by the way, it was never sent — it was never really sent back because everybody else settled. How does that work? Well, let me just make a — I have your question firmly in mind. I want to just observe two things about the premises to your question. One is that 3 percent of cases that are consolidated under the — of MDL cases get returned to districts for trial. The overwhelming majority never leave the transferee courts. Ginsburg. Well, that's because the parties, either they get dismissed pretrial or they settle, or the parties agree that the transferee court can be the trial court. But no one in a multidistrict litigation can be forced into going before the transferee court for trial. And I think it was quite clear that Congress didn't give the multidistrict forum the option to be the trial court. Justice Ginsburg, I totally agree, and if there were any ambiguity, this Court's The point is that it is up to the transferee judge, as it is up to any judge in a civil case, using the tools provided under Rule 42 to decide how to manage all of the cases that have been transferred. The judge may decide to let them proceed, only a couple of them, let them all proceed on their own. The judge may consolidate them, which is a formal act that has a known meaning and has real-world consequences, not just with respect to finality, but with respect to the compromise of the individual litigant's rights during the period in which consolidation occurs. And the period Scalia's statutes do not speak of consolidation of cases. They speak of consolidated proceedings. Where do you get the notion that the cases have been consolidated? And if that notion were true, surely the consolidation must terminate when one of the cases is dismissed. How can it still be consolidated when it's dismissed and the other cases are proceeding? I'm not quibbling at all, Justice Scalia, with the language. I'm perfectly happy to say that the proceedings are consolidated. The point here is that It makes a big difference. Well, I think it doesn't really make a big difference. The point here is, as this Court has repeatedly admonished, what constitutes a final decision under Section 1291 is not a technical concept, but rather, quote, the means to achieving a healthy legal system. And that does not describe So please answer Justice Breyer's question, because that is troubling me as well. At what moment, and if it's a notation from, if it's a settled case, when does he appeal? The appeal period runs from the time that all of the, that there is, that all of the other consolidated proceedings cases have resolved or been transferred. And the ordinary So what does he appeal from? I mean, there is an awkwardness here. Because he's not appealing from the judgment entered on behalf of or against the other parties. Let's be very, very clear about what he says he's appealing from. The only document that he's pointed to that suggests that he had a judgment way back in March of 2013 is entry 43 in the Gelboim docket, which is reproduced on page 11a of the Joint Appendix. He has the word of the district judge, you have an appeal of right. That's what she said. Well, what she said in adjudicating the request by other parties for a 54B certification this is on page 220 of the Petition Appendix, is that these plaintiffs and the Schwab plaintiffs have an appeal of right. There's no question that she misapprehended the rule in the Second Circuit that just because she had dismissed all of the claims in their suit, they have an appeal of right. But the notion that she entered a judgment She thought that she needed to do the 54B for the other cases that had more than one claim, not just the antitrust claim. Correct. And let me say something about their subsequent motion under the Gelboim, subsequent motion under 54B after the dismissal for lack of jurisdiction by the court of appeals. But first, point out to you that the order that she's referring to, 43, which says that the case is terminated pursuant to instructions from Chambers, you know, I wondered well, why isn't there anything in the docket that in fact terminates it? And the answer is on page 15 through 19 of the Joint Appendix, where, as you can see on page 19, she has reissued the same memorandum in order as modified 3 days later. And the language that they like to cite for the notion that there was a judgment in their case is missing. And that's why they, in fact, continue to be a party to the consolidated So, then, Mr. Giu, just let's go back to my question. I agree with you. I'd always learned, like Hornbook Rule No. 1, is there is a separate piece of paper called a judgment entered by the district court, and that is what you appeal from. Now, you have just told me there isn't one here in which Casey can't appeal. Okay? That's a separate reason. I'm now assuming another case. The case is, there is a separate piece of paper in his case called a judgment. His point is, that gives me a piece of paper called a judgment to appeal from. It was entered at a certain time, and now I know when the clock starts. That's right. What I said was, although some time ago, that what I thought he had a point is, in such a case, if we treat the consolidation of proceedings like we treat a consolidation of cases without the multidistrict, he cannot appeal from that piece of paper. He has to wait in the ordinary situation, not multidistrict, until there is another piece of paper resolving everything. Then he starts to appeal. But at least he has a piece of paper, which maybe he lacked here. All right. Now, he's saying here, in the multidistrict situation, there will be a separate piece of paper. I can't appeal from it. What is the piece of paper from which I know the clock on appeal begins to run? The same piece of paper that he lacks even to this day. That's a red herring at the moment. Well, okay. But let me at least finish my sentence. At the end of the district judge certifies that the consolidation period is over, whether that's, you know, at the end of discovery or at the end of pretrial The parties will seek, to the extent the Court has not entered it, under Rule 58, a separate piece of paper that says either judgment or that's the functional equivalent of judgment under Rule 54A, which says a judgment is an appealable order. Scalia, did you make this argument in opposition to the petition for certiorari? Mainly that there was no final judgment here? We did. And we got discouraged when the Court granted cert. But I mean, I'm not here just making a jurisdictional argument. My point in this case is that there was a problem because the judgment hadn't been entered. They said in all of these cases, when they're consolidated for pretrial, there is no right of appeal. You have to get permission under Rule 54B. They did not say anything about the problem in this case is that there was no judgment document. And isn't there and I know that there is a provision that says if the judgment if for some reason you don't have the piece of paper, that's not fatal. Justice Ginsburg, I respectfully suggest that you're mistaken in reading what the Second Circuit said. This is on page 2A of the petition appendix. And what it says is this Court has determined sua sponte that it lacks jurisdiction over these appeals because a final order has not been issued by the district court as contemplated by section 1291, comma, and the orders of the orders appealed from did not dispose of all the claims in the consolidated action. You're telling me that the Second Circuit doesn't have that rule, if there is a piece of paper that says judgment on it? The piece of paper, the Second Circuit's rule, which is the rule we think that ought to be applied throughout the country, is that when there is, when all of the claims of a party or in any multi-claim, multi-district proceeding, whether it's a single consolidated complaint or consolidated proceedings, judgment is entered by district courts when a Rule 54B-1 certification is issued. That is when a final judgment is made, or, assuming the court of appeals agrees, when there is a recommendation under section 1292B. That is the way that courts issue judgments during the period of consolidation when the other cases are proceeding. And it might have been a final judgment when the other cases are proceeding. Ginsburg. 1292B can't be applicable here. 1292B is when you don't have a final judgment. There is an interlocutory appeal. The typical case for 1292B is the court decides liability, but it hasn't decided damages yet. You can't run upstairs at that point unless you get a 1292B order. You are absolutely right, and I stand corrected. My point is that during the period when there are multi-claim, multi-party proceedings, either because they are different cases that are consolidated for a period of consolidation or a single omnibus complaint, which could have happened in this case, a ruling as to all the claims of a particular party or all of the parties as to a particular claim becomes a judgment when and only when the district court certifies a judgment under 54B. Scalia. Yes, but that's quite different. You were defending the proposition, I thought, that the Second Circuit said that there had been no final judgment in this case, not in the consolidated cases, but no final judgment in this case. And I don't read that order on page 2A as saying anything other than that there's not been a final order under 1291 because all the cases have not been disposed of. Well, I guess, you know, we can speculate about what they meant. They didn't say because. They said there's no final order under 1291 and all of the cases in the consolidated proceedings haven't been disposed of. But let me just make one point. Scalia. Well, I — that's a very strange way to read it, given the opinion of the Court. My case isn't turning on what actually happened here, but I think in thinking about the meaning of final decision under 1291, which doesn't use the word action, but it uses the word decision, what a final decision is, with an eye toward what is a healthy legal system, this case, I think, I think it's important to focus on just the features of this case as one of many, many examples why the rule that they're advocating is not correct. Alito, you raised the argument before us this morning that there wasn't a final judgment, and Petitioner argues that there was under Rule 58c2b. And you didn't address that, I believe, in your brief. So what is wrong with that argument? 58c2b. Well, the 58c2b is 150 days from the, quote, judgment that's reflected in 58b. And 58b1 in particular says, you know, entering judgment without the court's direction. And it says that if a court issues an order otherwise, unless the court orders otherwise, the clerk has to enter a written judgment. But the caveat there, which does apply in this case for reasons because this does involve, these consolidated proceedings are an action within the meaning of 54, is that 58b1 is, quote, subject to 54b. Now, in terms of — let me just make the point I was trying to make before, which is look exactly at what the Petitioner is trying to do in this case, just as an example of what a healthy judicial system is. They say that they're entitled to — they're required immediately to appeal, and the Second Circuit is obligated immediately to consider their appeal, notwithstanding — among other things, two things in particular. One, even as we are — the Court is considering this case, the district judge is considering claims by the plaintiffs in seven other consolidated cases that have raised Sherman Act claims, that, in fact, her prior ruling on Sherman Act antitrust injury does not apply to them. The briefing on those motions, on that issue, will be completed, I believe, on Christmas Eve. And so if an appeal had been proceeding, the Second Circuit would be considering precisely the same thing that the judge is reconsidering, and the cases are legion in which — Roberts. Well, that would seem to me very efficient. It would save her the difficulty of reconsidering it if the Second Circuit rules one way or another. It seems to me that the efficiency arguments in these cases, you know, they can go either way, and probably do go either way depending upon the nature of the case. It would be very efficient, would save her the time to reconsider it if she had a ruling from the Second Circuit. Just to be clear, Mr. Chief Justice, what she's considering are not requests to reconsider. She denied those a year ago, August. These are plaintiffs who claim that their antitrust claims are, in their minds, significantly different than the claims that Geldof brought. I thought you were making the other point. So the claims that she's looking at really are not affected by the Geldof claims. That's right, although — Then what problem is it to appeal? Excuse me? Then what's the problem with going ahead with the Geldof appeal? Well, the problem with going ahead with the Geldof appeal is the inefficiency and the threat to the — But it was a different reason. She said in the Geldof case, you have no antitrust injury. In other words, you have no standing out the door. And you say the other cases are different from that? They don't center on antitrust injury? No, they do. They are claiming that we — notwithstanding your prior ruling, in the circumstances of our cases, we do have antitrust injury. And from a point of view of a healthy judicial system, you would want the court of appeals to be able to consider the question of antitrust injury after the district judge has finally come to a concluded view as to all of the consolidated cases. Well, I think what the Chief Justice is indicating is to the extent that the issues — the claims are the same, the efficiency argument can cut both ways. To the extent that the claims are different, what's the problem with an appeal? Well, the court of appeals is being asked to consider the sufficiency of the allegations as to antitrust injury with respect to a common core of alleged facts, a course of conduct, and different parties. But is that the only thing, that they're going to have to learn the facts twice? Well, there — look, you can always argue that there are certain efficiencies in taking immediate piecemeal appeals. Our system, since the Judiciary Act of 1789, has set its sight against that and said that piecemeal appeals are disfavored. Another feature of this very piecemeal — If the district judge had been right the first time, she said, I have a claim that's totally dismissed, it's out. Then there are these other people that have antitrust claims and other claims. So what I'm going to do is this. Final judgment for the one that has no other claims, 54B on the antitrust claims for the others, so that the Second Circuit will then hear antitrust standing all at once. And the point is that there are other parties in the consolidated pleadings that say that their claims and their plaintiffs stand in a different position under the Sherman Act with respect to antitrust injury than Gelboim does. And why wouldn't a healthy system Well, the district judge obviously didn't think so, because she said, one party has an appeal of right, and I am going to give a 54B order for the others. She didn't consider, Justice Ginsburg, the seven parties that are now claiming that they are different. She was only considering the application by certain other parties for a 54B certification. And if you look at what the judge did after the Second Circuit held that it lacked jurisdiction, I think it's pretty revealing. Ms. Gelboim's lawyers and the lawyers of the parties who previously had had a 54B certification went back to the judge and said, okay, there was the Second Circuit thinks that there wasn't a final order, but it would be great to have the court of appeals decide the antitrust injury issue, please issue a 54B certification. And here is what the judge said. This is on page 294 of the joint appendix. Quote, this case has a wonderful host of interesting issues. We could send six different issues up to the circuit. We're not doing that seriatim. We're going to clean up this complaint. We're not picking and choosing particular questions and sending them up. And at the end of that hearing, the counsel for some of the plaintiffs with Sherman Act claims said, well, when you get done resolving, when you get done cleaning up the complaint and resolving the issues as of the pleading disputes, would you then grant a 54B certification? And she said, I'm not prepared to rule on that at this moment. But obviously they don't. Roberts. There's efficiency to the system and you have arguments about that, but there's also fairness to the parties. I mean, how many years are these people whose case is done, as far as the district court is concerned, supposed to sit around and wait for the big fish to resolve their cases? Well, the — it is a feature of the rule against piecemeal litigation that individual litigants sometimes have to wait. But what is particularly— It just kind of begs the question whether this is piecemeal or not for these people. Well, I think here's the point. There is no case, they have found not a single case in 46 years of MDL litigation where any party in their position or a similar position has had to wait an inordinate amount of time, and that is because in appropriate cases, whether the cases are consolidated for all purposes or some limited purpose, the courts exercise their discretion under Rule 54B. It has never happened that someone in their position has had to — has been required to wait for years and years, at least neither we nor they, who I'm confident have scoured the record of MDLs, in fact, has done this. And if— And then that sort of contradicts what you said before. You said she wasn't going to deal with these things piecemeal. By the way, on that point, she said, given the reaction of the Second Circuit more than once, it's time to give up. So she said that first, as far as that's concerned. I think, Justice Ginsburg, the point I wanted to make here is she has left fully open the possibility that when she finishes resolving the pleading problems, including the claims of the other seven Sherman Act plaintiffs who say they're different, she will reconsider whether to grant Rule 54B. And while I, you know, my friend on the other side says, well, there's, you know, there are all sorts of obscure procedural mechanisms where you could get this flexibility, the point here is that we have a rule that has already been made to deal with the resolution of all the claims of a party or all the parties of a claim, which is 54B. And the advantage of— What is obscure about a stay? Multidistrict cases and lots and lots of issues, and quite often stays of some cases are an issue. That's not obscure. Here's the difference. The difference is that under the stay regime, the status quo, that is, the presumption is that piecemeal appeals will go forward unless the district judge affirmatively acts. Under the regime, as we understand it and as all courts and commentators have understood it, the appeal will not go forward unless the district court makes the two findings that Rule 54B requires. One is that there really is a final order or final decision, and, second, that there is no just cause for delay, and it is that discipline, that focus that the rules place on the party that benefit the system. Thank you. Roberts. Thank you, counsel. Mr. Goldstein, you have 6 minutes remaining. Goldstein, Thank you, Mr. Chief Justice. Three brief preliminary points, and one— Sotomayor, you believe that the notation on 11A is the final judgment you're speaking about? Goldstein, I do, and this goes to Justice Scalia's point and the questions that were asked at oral argument. This argument was raised in the brief in opposition, whether we did have an appealable judgment. We addressed it in footnote 1 of our cert reply brief, and we were so obviously right that this is governed by Rule 58C that the Respondents abandoned this argument in the merits brief. The district court said our action is terminated and we have an appeal as a matter of right. That was quite plainly the judgment. We appealed within 150 days after that. So this you considered this fully, I am sure, because it was— You addressed it where? Footnote 1 of the brief and op—excuse me, our reply brief on cert. We have only one footnote. Okay. And we discuss at length their concessions that there was a final judgment, what it is the Second Circuit did, why it is terminating is a judgment, all of those points. This was presented to you, and we were so plainly right that they didn't even make the argument in their merits brief. It's still jurisdictional, but there quite clearly was a termination of the action that the district court understood was appealable. That's why Rule 58 exists. What are your other three points that make you plainly right on most occasions? That was actually the first point. The second one goes to Justice Breyer's concern that no one thinks that we are right. And Mr. Waxman's point that, oh, everyone understands, every commentator that this is done under Rule 54b. That is, in a word, ridiculous. Ours is the rule in the overwhelming majority of the country and has been for decades. Every time— Case sites. I'll give you two kinds of case sites. The cert petition cites all of the cases in the courts of appeals, including the D.C. Circuit, that say when you enter the judgment in the individual action, it's appealable. I have given you the 1935 MDL that uses the 58b example. But as Justice Ginsburg indicates, it's commonplace for MDL courts to enter stays and put individual actions on ice without entering judgments. The system as we describe it has been working for decades without any difficulty. And, Justice Ginsburg, my third preliminary point is that when Mr. Waxman says there are all of these other actions out there, it is a little bit of an optical illusion. When the district court entered this opinion, which resulted in our judgment, she entered the same order in every other single pending case. She was quite clear that it applied to all of the cases in the MDL. She denied reconsideration, explaining that no one could have antitrust standing. If there are other unrelated antitrust claims, then there's no problem with our appeal. Now, my big point is that there is no reason for you to muck about with and cause confusion in the law with respect to what a final judgment is, what an action is, what a constituent matter in an action is. When we can address all of his policy concerns in the way that MDL courts have been doing for decades, there is going to be considerable confusion that results. What are we supposed to appeal from? Justice Breyer, if you know the answer to your question, which you asked three times at the end of this argument, you are alone, I believe. I do not know what it is that I am supposed to appeal from, particularly if some of the cases settle. What is a — it's called the final judgment rule. We have a final judgment in our action. Imagine the following forms of confusion. What happens with American pipe tolling? When was our action dismissed? Therefore, some other individual person is required to file an individual lawsuit. What happens when you have multiple lawsuits that are together that look alike? Are those now a single action? What if the different lawsuits are coordinated rather than consolidated? Because remember, the three Schwab lawsuits were coordinated here, not consolidated. What do those people do? Why is it that you want to create a regime that creates all of these doubts, that has a new final judgment rule, a new definition of action despite the uniform meaning in all of the civil procedures, that will create just follow-on confusion when I have offered you the simple solution, and that is the district judge will enter a final judgment in the action if the district judge wants it to be appealable?  Sotomayor Is — basically, you're saying are there any other mechanisms for the district court to get to where it wants? A write-off, don't enter anything. Don't enter, enter. Stay and don't enter. Under 58, tell the court, the clerk of the court not to enter it. Under 42, create a consolidated complaint, as was done here with the OTC and exchange actions. That's actually very common. And that is the MDL court will say, I have four lawsuits in front of me. I am, under Rule 42, going to consolidate them into a single master complaint. That master complaint will have four different claims in it. And then the district court will simply resolve one of the claims in the master action without entering a judgment in the individual action, not the master action, the master complaint. It's not actually an action. There's an MDL docket, a main MDL docket. And the district court just doesn't enter a judgment in the individual action. Sotomayor Can that be done when it's consolidated only for purposes of pretrial discovery? It can. It is what's known. There's a Sixth Circuit case called Refrigerant that discusses this issue, and a Second Circuit case called Katz. It is called an administrative complaint. The district court uses this administrative complaint to manage the litigation. And that administrative complaint doesn't have the same docket as the individual actions. And the district court is perfectly capable of saying, I'm going to resolve the antitrust  complaint without entering a judgment. And when there's no judgment, there's no appeal. And you can announce that rule and give the district courts the flexibility that the retired district judges want without creating all of this unnecessary doctrinal confusion. As you say, Justice Sotomayor, district judges pay a lot of attention to your rulings. They will know what it is that they are supposed to do. And we just don't have a mess later on. I don't see anything in the rules about it. This is the first time I've heard about this administrative complaint. The administrative complaints are the most common tool that district judges use in MDL litigation, and I suggest the Refrigerant and Katz cases to explain it. Thank you, counsel. The case is submitted.